UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Johnny M. Ruffin, Jr.,
    Plaintiff,

v.                                                                                                                                                                                05-3007

Illinois Department of Corrections, et al.,
    Defendants.

Memorandum Opinion and Order

    Before the court are the defendants, Margaret Brian, Kenneth Brown, Robert Davenport, Ken Deen, John Evans, Julius Flagg, James Freeman, Matthew Freeman, Jason Garnett, Illinois Department of Corrections, Lawrence Correctional Center, Sharon McCorkle, Guy Pierce, Michelle Pulley, Chad Ray, Donald Snyder, Jr., Henry Teverbaugh, Jack Townley and Roger Walker, Jr.'s summary judgment motion [178], plaintiff's amended response [232] and defendants' reply [236].

Standard

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient

evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)).

Background

Plaintiff Johnny Ruffin, is a prisoner in the Illinois Department of Corrections (IDOC). On April 5, 2005, Plaintiff filed his 42 U.S.C. § 1983 complaint. Plaintiff was granted leave to amend his complaint on March 7, 2006 [82]. In his amended complaint, Plaintiff alleges Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights and the Rehabilitation Act of 1973 while he was housed at Lawrence Correctional Center (Lawrence) and
Pinckneyville Correctional Center (Pinckneyville). Specifically, Plaintiff alleges the following violations[1]:

> 1)Defendants Illinois Department of Corrections, Lawrence Correctional Center, Snyder, Walker, Pulley, Garnett, and Pierce violated the Rehabilitation Act of 1973 when Plaintiff was denied reasonable accommodation to the gym room area, including the fitness facilities and activities at Lawrence Correctional Center, and denied reasonable accommodation to his right hand/arm prosthetic on court writs;

> 2) Defendants Snyder, Walker, Pulley, Garnett, Pierce, and Brian violated Plaintiff's Eighth Amendment Rights by denying Plaintiff access to a physical therapist and his prosthetic for his right arm/hand during writs;

> 3) Defendants Pierce, Walker, Snyder, and Garnett violated Plaintiff's First and Fourteenth Amendment rights when they condoned the harassment and retaliation

---

[1]The claims against Defendant Gilreath were stayed in an August 13, 2007 Text Order until January 8, 2008.

2

initiated by Defendants Pulley and McCorkle and enforced by Defendants Freeman (James), Teverbaugh, Ray, Gilreath, and Freeman (Matthew);

4) Defendants Illinois Department of Corrections, Evans, Flagg, Deen, Davenport, Townley, and Walker violated the Rehabilitation Act of 1973 when Plaintiff was denied equal benefits and meaningful access to disciplinary proceedings and the shower facilities while housed at Pinckneyville Correctional Center.

Plaintiff requests compensatory and punitive damages, as well as injunctive relief. Defendants deny that they violated the Rehabilitation Act of 1973 or were deliberately indifferent to Plaintiff's medical needs. Plaintiff has no evidence to support his claims of a violation of the Rehabilitation Act. Defendants further deny that their actions or that their reliance on the opinion and judgment of medical professionals constituted a deliberate indifference to Plaintiff's medical needs. Defendants assert that Plaintiff has failed to prove the personal involvement of Defendants Snyder and Walker, and Plaintiff has also failed to prove that Defendants violated his Eighth Amendment rights. Plaintiff's dissatisfaction with the course of his medical treatment that he received does not constitute deliberate indifference to his medical needs. The remaining Defendants deny that they violated Plaintiff's Eighth Amendment rights. Plaintiff has no evidence to support his claims of deliberate indifference on behalf of Defendants. Finally, Defendants contend that Plaintiff has no evidence to support his claims of retaliation or harassment by Defendants. Therefore, Defendants believe that summary judgment should be granted in their favor and against the Plaintiff.

## Undisputed Material Facts[2]

1. Plaintiff, Johnny Ruffin, #K80541, is currently incarcerated at Pinckneyville.
2. Plaintiff was incarcerated at Lawrence from December 6, 2002 through July 23, 2004. (Exh. A, Plaintiff's Deposition, p. 8, lines 9-12).
3. Plaintiff was incarcerated at Pinckneyville from August 16, 2004 through April 28, 2005. (Exh. A, p. 78, lines 10-12).
4. Defendant Snyder is the former Director of the Illinois Department of Corrections. (See Exh. B, Miller Affidavit, ¶6).
5. Defendant Walker is the current Director of the Illinois Department of Corrections. (Exh. B, ¶8).
6. Defendant Snyder did not receive or review any of Plaintiff's letters or grievances regarding violations of the Rehabilitation Act at Lawrence Correctional Center or Pinckneyville Correctional Center. (Exh. B, ¶6).
7. Defendant Snyder did not receive or review any of Plaintiff's letters or grievances regarding medical care or treatment. (Exh. B, ¶6).

---

[2]Exhibits can be found attached to Defendants' memorandum of law [179]. Further, the Plaintiff did not dispute any of the Defendants' Undisputed Material Facts. See L. R. 7.1

8. Defendant Snyder did not receive or review any of Plaintiff's letters or grievances regarding retaliation or harassment by employees of the Illinois Department of Corrections. (Exh. B, ¶7).
9. Defendant Walker did not receive or review any of Plaintiff's letters or grievances regarding violations of the Rehabilitation Act at Lawrence Correctional Center or Pinckneyville Correctional Center. (Exh. B, ¶8).
10. Defendant Walker did not receive or review any of Plaintiff's letters or grievances regarding medical care or treatment. (Exh. B, ¶8).
11. Defendant Walker did not receive or review any of Plaintiff's letters or grievances regarding retaliation or harassment by employees of the Illinois Department of Corrections. (Exh. B, ¶9).
12. Defendant James Freeman is a Correctional Sergeant at Lawrence Correctional Center. (Exh. C, ¶1).
13 Defendant Teverbaugh was a Correctional Casework Supervisor Counselor from May 16, 2004 to June 30, 2004 at Lawrence Correctional Center. (Exh. D, ¶1).
14. Defendant Pulley was the Assistant Warden of Programs at Lawrence Correctional Center during the times alleged in Plaintiff's complaint. (Exh. E, ¶1).
15. Defendant Garnett was the Warden of Lawrence Correctional Center from January 1, 2004 until July 1, 2006. (Exh. F, ¶1).
16. Defendant Ray has been a Correctional Officer at Lawrence Correctional Center from July 16, 2001 to present. (Exh. G, ¶1).
17. Defendant Brown has been the Leisure Time Supervisor at Lawrence Correctional Center since August 1, 2001 to present. (Exh. H, ¶1).
18. Defendant Matthew Freeman has been a Correctional Officer at Lawrence Correctional Center since February 19, 2001 to present. (Exh. I, ¶1).
19. Defendant Brian is the Health Care Unit Administrator at Lawrence Correctional Center. (Exh. J, ¶1).
20. Defendant Pierce was the Warden of Lawrence Correctional Center from January 2002 until December 2003. (Exh. K, ¶1).
21. Defendant McCorkle is the Librarian at Lawrence Correctional Center and has held this position since July 1, 2001. (Exh. L, ¶1).
22. Defendant Davenport is a Lieutenant at Pinckneyville Correctional Center and has held this position since June 16, 1993. (Exh. M, ¶1).
23. Defendant Deen has been a Lieutenant at Pinckneyville Correctional Center since September of 2000. (Exh. N, ¶1).
24. Defendant Evans was Warden of Pinckneyville Correctional Center from December 16, 2003 to November 30, 2005. (Exh. O, ¶1).
25. Defendant Flagg was Assistant Warden of Programs at Pinckneyville Correctional Center from July 2001 to December 2005. (Exh. P, ¶1).
26. Defendant Townley has been employed as a Lieutenant at Pinckneyville Correctional Center since July 1996. (Exh. Q, ¶1).
27. Lawrence Correctional Center provides all offenders with equal access to the gym, as well as equal access to available exercise and recreational equipment. (See Exh. S, Boyd Affidavit, ¶3).

28. The maximum number of offenders allowed in the gym at one time is 90. (Exh. S, ¶4).
29. Due to the number of inmates on gym line at Lawrence Correctional Center, the gym was always congested. (Exh. A, p. 20, lines 9-11).
30. The Lawrence Correctional Center gyms have no architectural barriers to the weight equipment. The gym is equipped as budgetary and security issues allow. The gym is an open area in all respects and basketballs are available upon offender request at the beginning of the gym period. (Exh. S, ¶5).
31. All offenders at Lawrence Correctional Center are given equal opportunity to attend gym if they are in general population. Those offenders housed in segregation are subject to the policies and procedures relating to segregation. (Exh. S, ¶6).
32. Both disabled and non-disabled inmates were prevented from playing pick-up basketball games by other inmates. (Complaint, p. 13, ¶32).
33. When an inmate with a disability is transported out of Lawrence Correctional Center pursuant to a writ, employees of the Illinois Department of Corrections accommodate the inmate's disability while complying with the writ. (Exh. S, ¶7).
34. Inmates with a disability are not denied writs to appear in court or for an outside doctor's appointment, based upon their disability. (Exh. S, ¶7).
35. Any restrictions, other than safety and security, instituted as to how an inmate may be transported during a writ must be issued by qualified medical personnel. (Exh. S, ¶8).
36. Defendant Snyder did not deny Plaintiff the use of his prosthetic devices on court writs. (Exh. A, pp. 32-33).
37. Defendant Snyder did not witness Plaintiff being transported to court writs. (Exh. A, p. 33, lines 4-7).
38. Defendant Walker did not deny Plaintiff the use of his prosthetic devices on court writs. (Exh. A, p. 34, lines 7-15).
39. Defendant Pierce did not deny Plaintiff the use of his prosthetic devices on court writs. (Exh. A, p. 34, lines 7-15).
40. Defendant Pierce did not witness Plaintiff being transported to court writs. (Exh. A, p. 33, lines 8-15).
41. Defendant Pulley did not deny Plaintiff the use of his prosthetic devices on court writs. (Exh. A, p. 34, lines 1-3, Exh. E, ¶4).
42. Defendant Garnett did not deny Plaintiff the use of his prosthetic devices on court writs. (Exh. A, p. 34, lines 16-19).
43. There was no policy or procedure in place at Lawrence Correctional Center for employees of the Illinois Department of Corrections to deny inmates access to programs or activities based on their disabilities. (Exh. F, ¶8).
44. Defendants Garnett and Pierce did not establish a custom or policy to deny Plaintiff meaningful access to the gym at Lawrence Correctional Center. (Exh. F, ¶5, Exh. K, ¶5).
45. Defendants Garnett and Pierce did not establish a custom or policy to deny Plaintiff reasonable accommodation to the use of his prosthetic devices on court writs. (Exh. F, ¶6, Exh. K, ¶6).
46. Defendant Brown was not involved in developing customs or policies regarding the use of the gym room at Lawrence Correctional Center, nor was he involved in developing policies or customs regarding the transport of inmates on court writs. (Exh. H, 3¶).

47. Plaintiff received medical care while he was incarcerated at Lawrence Correctional Center. (Exh. A, p. 49, lines 8-11).
48. When Plaintiff arrived at Lawrence Correctional Center, his intake screening exam for medical issues was performed by Dr. Gonzalez. (Exh. A, p. 5, lines 19-20).
49. Plaintiff's intake form did not indicate Plaintiff was receiving physical therapy as a current treatment prior to his transfer from Menard Correctional Center to Lawrence Correctional Center. (Exh. R, ¶4).
50. Plaintiff's medical records did not include a medical order for physical therapy written by a physician at Menard Correctional Center prior to his transfer to Lawrence Correctoinal Center. (Exh. R, ¶5).
51. Physical therapy could only be obtained if clinically ordered. (Exh. R, ¶5, Exh. J, ¶4).
52. An order for physical therapy must be given by a physician. (Exh. R, ¶5).
53. If physical therapy is determined to be medically indicated, it may be with the physician on-site, or per vendor utilization approval completed per outside consultant. (Exh. J, ¶4).
54. Plaintiff was seen by Dr. Rosalina Gonzalez upon his transfer to Lawrence Correctional Center in December 2002. (Complaint [82], p. 17, ¶51).
55. Dr. Gonzalez diagnosed Plaintiff as a paraplegia, with partial paralysis of his right arm and right hand due to a C6 and C7 spinal cord injury. (Complaint [82], p. 17, ¶53).
56. Dr. Gonzalez did not proscribe a course of physical therapy for Plaintiff during the intake medical examination. (Complaint [82], p. 17, ¶55).
57. Dr. Gonzalez informed Plaintiff he was able to complete physical therapy on his own. (Exh. A, pp. 40-41).
58. Plaintiff's medical records indicate that on December 2, 2003, Dr. Gonzalez ordered Plaintiff to strengthen his legs by walking. (Exh. R, ¶7).
59. From December 8, 2003 to July 26, 2004, Plaintiff was seen in the Lawrence Health Care Unit for a combination of ambulation, stretching exercises, and to ride the stationary bike for a total of 55 days. (Exh. R, ¶7).
60. Plaintiff refused this treatment during the December 8, 2003 to July 26, 2004 a total of 15 times. (Exh. R, ¶7).
61. On June 11, 2004, Plaintiff refused his appointment to ride the stationary bike in the Health Care Unit and attempt to stand because he was sore from lifting weights in the gym. (Exh. R, ¶2).
62. Defendant Brian did not have the authority to hire a physical therapist to work in the Health Care Unit at Lawrence Correctional Center. (Exh. J, ¶7).
63. Defendant Brian did not have direct involvement in any decisions concerning medical care for Plaintiff, and did not direct or approve a course of treatment for Plaintiff. (Exh. J, ¶6).
64. Defendant Walker did not deny Plaintiff access to medical care or treatment. (Exh. A, p. 48, lines 16-19).
65. Defendant Snyder did not deny Plaintiff access to medical care or treatment. (Exh. A, p. 48, lines 20-22).
66. Defendant Pulley did not deny Plaintiff access to medical care or treatment. (Exh. A, p. 48, lines 23-25).

67. None of the Defendants had the authority to overrule a doctor's decisions. (Exh. A, p. 40, lines 9-12).
68. Plaintiff is suing Defendants Ray and Teverbaugh because they were Adjustment Committee Members who found Plaintiff guilty of a disciplinary ticket. (Exh. A, pp. 52-53).
69. Defendants Ray and Teverbaugh did not retaliate against Plaintiff. (Exh. A, p. 53, lines 10-15).
70. Defendant Ray served as an Adjustment Committee Member when disciplinary tickets for Plaintiff, including November 25, 2003 and December of 2005 were heard. (Exh. G, ¶6).
71. Defendant Ray was a member of the Adjustment Committee that heard Plaintiff's disciplinary ticket regarding trading and trafficking. (Exh. A, p. 60, lines 17-22).
72. Defendant Teverbaugh served as an Adjustment Committee Member that heard Plaintiff's disciplinary tickets, including November 25, 2003, December 2003, and April 2004. (Exh. D, ¶3).
73. Plaintiff was not prohibited from filing grievances by any of the Defendants. (Exh. A, p. 62, lines 5-7).
74. There were not policies or customs established at Lawrence Correctional Center to deny all grievances filed by disabled inmates. (Exh. E, ¶7).
75. Defendants deny that they retaliated against or harassed Plaintiff. (Exhs. C, ¶7, D, ¶7, E, ¶6, F, ¶11, G, ¶9, H, ¶7, I, ¶7, K, ¶8, L, ¶3).
76. Defendants did not file false or retaliatory disciplinary tickets against Plaintiff. (Exhs. C, ¶5, D, ¶5, E, ¶5, G, ¶5, L, ¶4).
77. Defendant McCorkle never ordered Plaintiff to leave the law library out of retaliation or to harass Plaintiff. (Exh. L, ¶5).
78. Defendants Garnett and Pierce assigned a designee to review inmate grievances while Warden of Lawrence Correctional Center. (Exh. F, ¶3, Exh. K, ¶4).
79. Defendants Garnett and Pierce did not review Plaintiff's grievances or the final determinations by their designees of the decisions regarding Plaintiff. (Exh. F, ¶4, Exh. K, ¶4).
80. Inmates housed in segregation at Pinckneyville Correctional Center have their disciplinary tickets heard in the cell house where the inmate lives. (Exh. M, ¶4).
81. R-5 cell house is segregation at Pinckneyville Correctional Center. (Exh. M, ¶3).
82. A disciplinary hearing took place at Plaintiff's segregation cell while he was incarcerated at Pinckneyville Correctional Center. (Exh. A, p. 67, lines 4-19).
83. Defendant Dean heard Plaintiff's ticket at Plaintiff's cell in segregation on April 29, 2005. (Exh. A, p. 67, lines 12-19).
84. Plaintiff's disciplinary ticket was written by Defendant Townley. (Exh. A, p. 69, lines 8-12).
85. Plaintiff was found guilty of the offenses set forth in the disciplinary ticket. (Exh. A, p. 71, lines 5-7).
86. Defendants did not discriminate against Plaintiff due to his disability. (Exh. M, ¶5, Exh. N, ¶6, Exh. Q, ¶5).

87. Defendants Davenport, Deen, and Townley did not have a job description that included creating policies for Pinckneyville Correctional Center. (Exh. M, ¶6, Exh. N, ¶7, Exh. Q, ¶6).
88. Defendant Evans did not establish a custom or policy at Pinckneyville Correctional Center to deny Plaintiff meaningful access to the disciplinary proceedings. (Exh. O, ¶5).
89. Defendant Flagg did not deny Plaintiff meaningful access to the disciplinary proceedings at Pinckneyville Correctional Center. (Exh. P, ¶3).
90. Disabled inmates are given fifteen minutes prior to day room time to have access to the shower area. (Exh. A, p. 71, lines 21-25).
91. Plaintiff uses a shower chair. (Exh. A, p. 72, lines 1-2).
92. Disabled inmates and non-disabled inmates are allowed to shower during day room time. (Exh. A, p. 72, lines 6-12).
93. Day room time for the morning is 8:30-9:30 am. (Exh. A, p. 72, l. 15).
94. Day room time for the afternoon is 12:30 to 2:30 p.m. (Exh. A, p. 72, lines 15- 17).
95. Plaintiff believes that fifteen minutes, in addition to the day room times when all inmates are allowed to shower, is inadequate. (Exh. A, p. 72, lines 13-24).
96. Pinckneyville Correctional Center provided disabled inmates, including Plaintiff, with ime in excess of that allowed for non-disabled inmates to shower. (Exh. P, ¶4).
97. Defendant Flagg did not deny Plaintiff meaningful access to the shower area at Pinckneyville Correctional Center. (Exh. P, ¶4).
98. Defendant Evans did not establish a custom or policy at Pinckneyville Correctional Center for a discriminatory shower policy. (Exh. O, ¶4).

Discussion and Conclusion

Under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, a federal grant recipient is prohibited from discriminating against an otherwise qualified handicapped individual solely because of that disability. *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 119 (7th Cir.1997). The Rehabilitation Act states that:

> No otherwise qualified individual with a disability . . . as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29. U.S.C.A. §794 (2002).

Section 705(20) of the Rehabilitation Act defines an individual with a disability as meaning, "any
individual who – (i) has a physical . . . impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services. . . 29 U.S.C.A. §705(20)(1998). To state a claim under Section 504 a plaintiff must prove four elements: (1) plaintiff is a 'handicapped individual under the Act'; (2) plaintiff is 'otherwise qualified' for the benefit

sought; (3) plaintiff was discriminated against solely by reason of his or her handicap; and (4) that the program or activity in question receives federal financial assistance. Johnson by *Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992). "Section 504 proscribes discrimination between the non-handicapped and the 'otherwise qualified' handicapped. It does not create any absolute substantive right to treatment." *Id*. at 1494. In order to satisfy the third requirement, the plaintiff must prove that the discrimination resulted from "the handicap and from the handicap alone." *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1257 (7th Cir. 1997). Moreover, "allegations of discriminatory medical treatment do not fit into the four-element framework required by Section 504." Grzan at 121. While the Rehabilitation Act applies to state prisoners and prisons, *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997), the Act does not require prison officials to give handicapped inmates preferential treatment. *Lue v. Moore*, 43 F.3d 1203, (8th Circuit, 1994). Defendants assert that for the purposes of this motion only, they will assume Plaintiff is a partial paraplegic and a qualified individual under the Rehabilitation Act. The court does also.

Lawrence Correctional Center

      Plaintiff fails to prove that he was denied access to programs or activities solely due to his disabilities while he was housed at Lawrence Correctional Center. In his Complaint, Plaintiff alleges that the policies and actions of Defendants Illinois Department of Corrections and Lawrence Correctional Center, as well as Defendants Snyder, Pierce, Pulley, Walker, Brown, and Garnett constituted a violation of the Rehabilitation Act of 1973. Plaintiff asserts he was excluded from participation in programs, services and activities at Lawrence Correctional Center, and was thus denied the benefits of those programs, services and activities.

      Plaintiff's claims regarding the gym room being in violation of the Rehabilitation Act fail to meet the requirements set forth by the Rehabilitation Act. Plaintiff has not shown that based solely by reason of his disability that he was denied the benefits of a program or activity. Plaintiff asserts in Count 1 of his Complaint that he was denied reasonable accommodation to the gym room, and denied a reasonable accommodation to the use of his right-hand/arm prosthetic on court writs. However, the record before this court shows the Plaintiff has not been denied equal access to the gym at Lawrence Correctional Center. Plaintiff had equal access and opportunity to attend the gym periods. (Exh. S, ¶3). Furthermore, there were no architectural barriers to the weight equipment. (Exh. S, ¶33). The congestion of the gym at Lawrence Correctional Center impacted both disabled and non-disabled inmates. (Exh. A, p. 20, lines 9-11, Complaint, p. 13, ¶32). Plaintiff admits that non-disabled inmates also were subjected to the use of a congested gym, with disabled and non-disabled inmates prevented from fully participating in activities in the gym. (Complaint, p. 13, ¶32). Plaintiff does not claim that he is denied the access to the gym, rather, Plaintiff claims that because of his disability and the number of inmates allowed in the gym, he did not have equal access to the gym. However, Plaintiff's admission that the congestion in the gym impacted all inmates refutes his argument that Defendants violated the Rehabilitation Act. Therefore, Plaintiff has failed to show that he was denied the benefit of the gym due solely based on disability.

9

Further, the Plaintiff fails to establish that he was denied access to a program or service due to the denial of the use of his right hand/arm prosthetic device on court writs. Plaintiff was not denied access to a program or service that was provided to non-disabled inmates. Plaintiff asserts that he was denied access to medical treatment that would apply only to his medical needs. Further, Plaintiff was not denied writs to appear in court or for outside doctor's appointments based on his disability. (Exh. S, ¶7). Aside from Plaintiff's belief that he was denied access to medical treatment based upon his handicap, he has provided no factual support for his allegation that Defendants violated his rights under the Rehabilitation Act. Additionally, Plaintiff fails to support his argument that the use of a prosthetic device should be considered a program or activity. Plaintiff's disability is the only reason he was using a prosthetic device. Plaintiff cannot show that non-disabled inmates received access to a program or activity, in this case, a prosthetic device, that was denied to Plaintiff solely based on his disabilities. Therefore, this claim fails.

Pinckneyville Correctional Center

Plaintiff also fails to prove that he was denied access to programs or activities solely due to his disabilities while he was housed at Pinckneyville Correctional Center. Plaintiff asserts that he was denied equal benefits and meaningful access to Pinckneyville Correctional Center's disciplinary proceedings and shower facilities. (See Complaint generally.) Plaintiff fails to adequately support his argument that he was denied equal access to disciplinary proceedings while he was housed in Pinckneyville Correctional Center's segregation unit. Plaintiff cites to two specific incidents during which he alleges he was denied equal access to disciplinary proceedings - April 29, 2005 and May 15, 2005 - because the hearings were held in the segregation unit with Plaintiff participating from his cell. (Complaint ¶109, ¶119.)

Plaintiff was not denied access to a disciplinary proceeding for his disciplinary tickets. (Exh. A, p. 67, lines 4-19). When an inmate receives a disciplinary ticket while housed in segregation at Pinckneyville Correctional Center, the Adjustment Committee hearing takes place in segregation. (Exh. M, ¶4). Plaintiff does not claim that he was denied an opportunity to present his case, but rather, that Defendants Deen and Davenport could not adequately hear his defense. (Complaint, ¶111, ¶119). Plaintiff provides no support for his assertions, nor do his statements support his claims that his hearings took place in violation of the Rehabilitation Act. Plaintiff is not entitled to summary judgment on his claim that he was denied equal access to the shower facilities at Pinckneyville Correctional Center. To the contrary, Plaintiff was provided shower access at least equal to, if not greater than, inmates who are not disabled. (Exh. P, ¶4). Plaintiff states that as a disabled prisoner, he is given 15 minutes to shower before assigned day room without inmates other than those with disabilities. (Plaintiff's Motion for Summary Judgment [118], p. 10). While Plaintiff argues that this additional time is inadequate, Plaintiff admits that he is also allowed to shower during the times when non-disabled inmates shower, which is an additional two hours each day. (Id., pp. 10-11). Plaintiff was given additional time to shower in order to accommodate his disability and provide him with greater access to the shower facility at Pinckneyville Correctional Center, rather than Plaintiff receiving less time than non-disabled inmates. Thus, Plaintiff was given time in excess of that given to non-disabled

10

inmates and cannot support his argument that he was denied of equal access to the shower. Therefore, summary judgment must be granted in favor of the Defendants.

In order to establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Therefore, a prison official cannot be liable under the Eighth Amendment "unless he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer* at 847 (1994). A prison official must reasonably respond to a prisoner's complaints, through the investigation and referral of a plaintiff's complaints, in order to be insulated from liability. *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). Otherwise, "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that this prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004). The Eighth Amendment does not provide that an inmate is entitled to demand specific care, nor does it entitle him to the best care available. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets minimal standards of adequacy," *Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir. 1987)), inmates are not entitled to unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. Detella*, 95 F.3d 586, 592 (7th Cir. 1996). Finally, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEahern v. Civiletti*, 502 F. Supp. 531, 534 (N.D. Ill. 1980); *see also Allen v. City of Rockford*, 349 F. 3rd 1015, 1020 (7th Cir. 2003) (Government employees are entitled to rely on a physician's determination of the best way to treat a patient). Accordingly, a non-medical prison official is entitled to summary judgment on a claim of deliberate indifference when he or she reasonably responds to an inmate's complaint of grievance by ensuring the inmate has been evaluated by a physician and received medical care for the complained of condition. *Johnson v. Doughty*, 433 F.3d 1001, 1010-1012 (7th Cir. 2006).

Physical Therapy

Plaintiff is suing Defendants Brian, Pulley, Pierce, and Garnett in their individual and official capacities. Plaintiff is suing Defendants Snyder and Walker in their official capacities. Plaintiff believes Defendants were informed of his medical needs and failed to hire a physical therapist, or, in the alternative, send Plaintiff to an outside facility for physical therapy. (Complaint, ¶63). Plaintiff's claims as to deliberate indifference on the part of the Defendants are without merit. Plaintiff received medical care while he was incarcerated at Lawrence

11

Correctional Center. (Exh. A, p. 49, lines 8-11). Plaintiff does not dispute this fact, but argues that he should have been given access to physical therapy upon his arrival at Lawrence Correctional Center. (Complaint, ¶58). Plaintiff's medical records did not indicate that he was receiving physical therapy upon his transfer into Lawrence Correctional Center (Exh. R, ¶4), and in order for an inmate to receive physical therapy, it must be clinically ordered by a physician. (Exh. R, ¶5). Plaintiff was not prescribed physical therapy when he arrived at Lawrence Correctional Center. (Complaint, ¶55). Furthermore, Plaintiff's medical records indicate that during 2003, he was provided a combination of treatments, including riding a stationary bike, practicing standing with assistance, or using parallel bars in the Health Care Unit on a total of 55 days. (Exh. R, ¶7). Thus, when Plaintiff was ordered by Dr. Gonzalez to strengthen his legs by walking, he received the prescribed treatment. (Exh. R, ¶7).

Defendants may have been aware that Plaintiff was dissatisfied with his medical care at Lawrence Correctional Center, however, this does not amount to deliberate indifference on the part of Defendants. Defendants did not deny Plaintiff access to medical care or treatment. (Exh. J, ¶6, Exh. A, p. 48, lines 16-25). The denial of Plaintiff's grievances does not constitute deliberate indifference to Plaintiff's medical needs. Nor does the knowledge that Plaintiff filed several grievances regarding his medical care and treatment lead to the conclusion that Defendants were deliberately indifferent to Plaintiff's medical needs. Furthermore, Plaintiff admits that none of the named Defendants had the authority to overrule a doctor's decisions. (Exh. A, p. 40, lines 9-12). Finally, Plaintiff has the burden of showing causation for his alleged injuries. The record does not show whether or not Plaintiff completed the exercises he was taught to do in his cell. Once Plaintiff was provided with therapy in 2003, his medical records indicate that he failed to attend all of the scheduled sessions. Thus, Plaintiff was given directions and a course of treatment that he chose not to follow and has failed to prove that his injuries were caused by Defendants. Therefore, Plaintiff failed to support his claims of deliberate indifference to his medical needs and summary judgment is granted in favor of Defendants.

Right Hand/Arm brace

Plaintiff believes Defendants were informed of his medical needs and failed to provide Plaintiff with access to his right hand/arm brace while he was on court writs. (Complaint, ¶58). Plaintiff's claims as to deliberate indifference on the part of the Defendants this claim are also without merit. Plaintiff does not support a claim for a risk of serious injury based on the use of his right hand/arm brace. Plaintiff does not claim that Defendants were physicians, and again he admits Defendants did not have the authority to override the decisions of physicians. (Exh. A, p. 40, lines 9-12). Furthermore, Plaintiff fails to allege that Defendants did not respond to any of his complaints or grievances regarding this issue. Any restrictions as to how an inmate may be transported during a writ must be issued by a qualified medical personnel. (Exh. S, ¶8). There is nothing in the record to indicate that medical personnel place any restriction as to how Plaintiff was to be transported during writs. Therefore, Plaintiff again fails to support his claims of deliberate indifference as to his medical needs and summary judgment is entered in favor of Defendants.

12

Retaliation

Plaintiff has failed to proved that the Defendants retaliated against him or harassed him. An act of retaliation for the exercise of a constitutionally protected right violates the constitution. *DeWalt v. Carter*, 224 F. 3d 607, 618 (7th Cir. 1999), *citing Mt. Healthy City of School District Board of Education v. Doyle*, 429 U.S. 274, 283-4(1977). However, the protected conduct must be a substantial or motivating factor in the retaliation action. *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *Carter v. Illinois Dept. of Corrections*, 2007 WL 1576483, 4 (S.D.Ill.,2007). Merley alleging the fact of retaliation is insufficient. *Benson v. Cady*, 761 F. 2d 335, 342 (7th Cir. 1985). The plaintiff must allege a chronology of events from which retaliation may plausibly be inferred. *Cain v. Lane*, 857 F. 2d 1139, 1143 f. 6 (7th Cir. 1988) *citing Murphy v. Lane*, 833 F. 2d 106, 108-9 (7th Cir. 1987).

Pulley, McCorkle, Pierce, Walker, Snyder, Garnett

Plaintiff fails to support a claim for retaliation or harassment on the part of Defendants Pulley, McCorkle, Pierce, Walker, Snyder, or Garnett. Plaintiff asserts that because he filed grievances and sent letters to Defendants regarding his medical care and filed lawsuits, Defendants harassed and retaliated against him. (Complaint, generally). Specifically, Plaintiff believes that Defendants enforced unstated policies that caused Plaintiff harm. The record shows that Plaintiff has not been denied the opportunity to file grievances, nor has he been denied access to the courts. Defendants deny that they retaliated against or harassed Plaintiff for filing grievances. (Exh.s B, E, F, K, L). While Plaintiff has referenced several grievances he has filed against Defendants or other employees of the Illinois Department of Corrections, he fails to allege a chronology of events that would create the inference of retaliation on the part of Defendants. A majority of Plaintiff's claims relate to the fact that he received disciplinary tickets, and was later found guilty of those tickets. (Complaint, ¶83). Plaintiff's receipt of disciplinary tickets, and subsequent finding of guilt, does not amount to retaliation on the part of Defendants.

Additionally, Plaintiff failed to include a chronology of events regarding Defendants' actions from which retaliation could be logically inferred. Plaintiff asserts that Defendants "condoned" the actions of Defendants McCorkle and Pulley, yet fails to support his argument with evidence as to how Defendants Snyder, Walker, Garnett, and Pierce were aware of their actions. Additionally, Defendants Snyder, Walker, Garnett, and Pierce did not receive or review Plaintiff's grievances and therefore the inference of retaliation cannot reasonably be inferred for Defendants who lacked knowledge of Plaintiff's grievances. (Exh.s B, F, K). Plaintiff asserts that Defendant McCorkle harassed and retaliated against him by denying him access to his legal documents and access to the courts, leading Defendant McCorkle to use the prison disciplinary process as retribution for Plaintiff filing grievances against Defendant McCorkle. (Complaint, ¶84). Defendant McCorkle did not retaliate against or harass Plaintiff for filing these grievances. (Exh. L, ¶4). Plaintiff's present complaint refutes his own argument that he

was denied access to the courts. Therefore, Plaintiff failed to establish that Defendants retaliated against or harassed him, and Defendants are entitled to summary judgment.

James Freeman, Teverbaugh, Ray, Matthew Freeman

Plaintiff also fails to support a claim for retaliation or harassment on the part of Defendants James Freeman, Teverbaugh, Ray, and Matthew Freeman. Plaintiff claims that Defendants James Freeman, Teverbaugh, Ray, and Matthew Freeman were involved with harassing and retaliating against Plaintiff by enforcing "malicious policies" cannot be supported. (Complaint, ¶85). Plaintiff fails to cite to any written policies that were enacted in order to harass or retaliate against Plaintiff. Furthermore, Defendants deny that there were any malicious policies in place to harass or retaliate against any inmate. It appears that Plaintiff is suing Defendants Ray and Teverbaugh just because they found Plaintiff guilty of a disciplinary infraction. (Exh. A, pp. 52-53). These Defendants, as well as Defendants James Freeman and Matthew Freeman, did not prohibit Plaintiff from filing grievances. (Exh. A, p. 62). Plaintiff fails to set forth any chronology of events that include actions of Defendants from which retaliation may be inferred. The hearing of Plaintiff's disciplinary ticket on two occasions and subsequent finding of guilt does not lead to the conclusion that Defendants retaliated against Plaintiff. Nor does Defendant Matthew Freeman's interview of Plaintiff, regarding a grievance filed by Plaintiff, support the finding of retaliation. (Complaint, ¶92). Finally, Plaintiff makes no specific claims against Defendant James Freeman, other than he confiscated legal documents from Plaintiff (Complaint, ¶92), and that does not support the inference of a chronology of events resulting in support for a claim of retaliation. Therefore, Plaintiff failed to establish that Defendants retaliated against or harassed him. Defendants are granted summary judgment on Plaintiff's claims of retaliation.

The court notes that Gilreath did not join the instant summary judgment motion as it was filed when the case was stayed as to Gilreath who was on a tour of duty with the armed forces. See court's August 23, 2007 text order. Plaintiff's claim against Gilreath is that Plaintiff's First and Fourteenth Amendment rights when Gilreath condoned the harassment and retaliation initiated by Defendants Pulley and McCorkle and enforced by Defendants Freeman (James), Teverbaugh, Ray, Gilreath, and Freeman (Matthew). As the Plaintiff's claims of retaliation fail against these defendants, his claim that Gilreath condoned the harassment and retaliation also fails. Gilreath is granted summary judgment.

Further, Plaintiff has failed to show personal involvement of Defendants, Snyder, Walker, Garnett and Pierce. Liability under 42 U.S.C. §1983 must be based on a defendant's personal involvement in the alleged constitutional deprivation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Thus, an individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). Some causal connection or affirmative link between the action complained about and the official sued is necessary in order for a plaintiff to recover under § 1983. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). "Section 1983 does not allow a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 102 S.Ct. 445, 453

(1981). A supervisory official can be liable only for his own misconduct, not that of those under his supervision. *Duckworth v. Franzen*, 780 F.2d 645 (7th Cir. 1985). Thus, a supervisory official must be personally involved in the alleged conduct to be liable. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Defendants Snyder and Walker

Plaintiff has failed to prove Defendant Snyder's and Defendant Walker's personal involvement in Plaintiff's medical care and/or the grievance process such that Plaintiff could recover under his Section 1983 claims. Plaintiff claims in his compliant that Defendants Snyder and Walker were informed of Plaintiff's complaints through letters and grievances. Defendants Snyder and Walker delegated their responsibilities regarding the review of inmate grievances and complaints to members of the Administrative Review Board. (Exh. B). The signatures which appear on Plaintiff's grievance responses from the Administrative Review Board did not belong to Defendant Snyder or Defendant Walker, but rather, to their subordinates. (Exh. B). Defendants Snyder and Walker had no knowledge regarding Plaintiff's complaints regarding his medical care, alleged violations of the Rehabilitation Act, or claims of retaliation and harassment through the grievance process, as this information would have been reviewed by a designee of Defendant Snyder or Walker. (Exh. B). Due to their lack of personal involvement in any of the events concerning Plaintiff's claims, summary judgment is granted in favor of Defendants Snyder and Walker.

Defendants Garnett and Pierce

Plaintiff has failed to prove Defendant Garnett's and Defendant Pierce's personal involvement in Plaintiff's medical care and/or the grievance process such that Plaintiff could recover under his Section 1983 claims. Defendants Garnett and Pierce did not review Plaintiff's grievances or the final determinations by their designees of the decisions regarding Plaintiff. (Exh.s F, K). Defendants Garnet and Pierce assigned a designee to review inmate grievances during their individual tenures as Warden of Lawrence Correctional Center. (Exh.s F, K). Therefore, summary judgment is granted in favor of Defendants Garnett and because they had no personal involvement in any of the events concerning Plaintiff's claims.

As the Plaintiff's claims fails he has no basis for claims against any of the defendants in their official capacity. Furthermore, a suit against a State employee in his or her official capacity rather than in his or her individual capacity is a suit against the State. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The law is well-settled that suits against State employees acting in their official capacities are barred by the Eleventh Amendment unless the State consents. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974), reh'g denied, 416 U.S. 1000; *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir. 1985), cert. denied, 479 U.S. 816. This is true even though the State is not named as a party to the action. *Edelman v. Jordan*, 415 U.S. 651, 663. Furthermore, Defendants cannot be used in their official capacities in 42 U.S.C. §1983 claims based on personal involvement. Therefore, Plaintiff's request for damages from

Defendants in their official capacities under 42 U.S.C. §1983 is denied and they are granted summary judgment.

Based on the foregoing, the court finds that Plaintiff is not entitled to injunctive relief. In *Green v. Mansour*, 474 U.S. 64, (1986), the United States Supreme Court held that injunctive relief is improper in suits where there is no ongoing violation of the plaintiff's constitutional rights. There is nothing in the record before the court that indicates there is an ongoing violation.

It is therefore ordered:

1. Defendants' motion for summary judgment [178] is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants, Margaret Brian, Kenneth Brown, Robert Davenport, Ken Deen, John Evans, Julius Flagg, James Freeman, Matthew Freeman, Jason Garnett, Illinois Department of Correections, Lawrence Correctional Center, Sharon McCorkle, Guy Pierce, Michelle Pulley, Chad Ray, Donald Snyder, Jr., Henry Teverbaugh, Jack Townley, Roger Walker, Jr., and Gilreath (filed as Gilruath) and against the plaintiff pursuant to Fed. R. Civ. P. 56. This case is closed in its entirety. The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 30th day of September 2010.

**\s\Harold A. Baker**
_____
Harold A. Baker
United States District Court